IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THE INDEPENDENT ORDER OF FORESTERS,<br><br>        Plaintiff/Counter-Defendant,<br><br>   v.<br><br>GALEN T. ASHE, JMN (MINOR),<br><br>        Defendants,<br><br>& THE ESTATE OF RICHARD B. NIXON, SR.,<br><br>        Defendant/Counter-Plaintiff. | CIVIL ACTION FILE NO.<br><br>1:12-cv-03611-RGV |

## ORDER

The Independent Order of Foresters ("IOF") moves for summary judgment, [Docs. 49 & 50],[1] on a counterclaim filed by the Estate of Richard B. Nixon, Sr. (the "Estate"), [Doc. 9]. The time for filing a response to IOF's motion has expired without a response; therefore, the motion is deemed unopposed. See LR 7.1(B), NDGa.; Kramer v. Gwinnett Cnty., Ga., 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) (citation omitted) ("[A] party's failure to respond to any portion or claim in a motion

---

[1] The listed document and page numbers in citations to the record in this Order refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

indicates such portion, claim or defense is unopposed.").[2] For the reasons stated herein, IOF's amended motion for summary judgment, [Doc. 50], is **GRANTED**.

## I. FACTUAL BACKGROUND[3]

On March 29, 2009, IOF issued Richard B. Nixon, Sr. ("Nixon") a term life insurance certificate ("certificate") with a face value of $125,000.00. [Doc. 1-1 (the certificate)].[4] In the application for insurance ("the application"), [Doc. 1-2], Nixon designated "Galen Nixon" as his primary beneficiary, [id. at 3]. The beneficiary's relationship to the insured is listed as "son," and the stated percent share is "100[%.]" [Id.]. Nixon signed the application, [id. at 8], acknowledging, among other things, that he had read the answers as recorded on the application and that

---

[2] Although the motion is unopposed, the Court has carefully reviewed IOF's motion and the evidence in support thereof. See Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008) (footnote and internal marks omitted) (quoting United States v. One Piece of Real Prop., 363 F.3d 1099, 1101-02 (11th Cir. 2004)) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, . . . . but must ensure that the motion itself is supported by evidentiary materials. At the least, the [] court must review all of the evidentiary materials submitted in support of the motion for summary judgment.").

[3] Because the Estate has failed to respond, the following facts, which are drawn from IOF's statement of material facts as to which there is no genuine issue to be tried, [Doc. 50-4], and which are supported by the record as indicated, are deemed admitted. See LR 56.1B(2)a(2), NDGa.; BMU, Inc. v. Cumulus Media, Inc., 366 F. App'x 47, 48-49 (11th Cir. 2010) (per curiam) (unpublished).

[4] The certificate was also assigned a number: 7039647. [Doc. 1-1].

"[t]he statements, answers, and representations contained in th[e] [a]pplication are full, complete, and true[,]" [id. at 7].

Nixon's application was completed at his residence in Atlanta by insurance producer Benjamin Clayton Johnson ("Johnson"), see [id. at 8; Doc. 1-8 (Johnson Aff.)]. Johnson was an independent contractor who agreed to solicit business for IOF. See [Doc. 49-3 (Fargo Aff.) at 2-3; id. at 4-10 (Johnson Agreement)]. Johnson was never an employee of IOF and never executed an employment contract with IOF. [Id. at 3]. Nor did IOF ever control "the time, manner, or method in which [] Johnson sold its products." [Id. at 2-3; see also id. at 4].

After Nixon died on September 16, 2011, see [Doc. 1-3 at 7 (death certificate)], IOF learned that Nixon did not have a son named Galen Nixon, see [Doc. 1 ¶ 10; Doc. 8 ¶ 10; Doc. 50-4 ¶ 5], and began receiving competing claims to the death benefits of Nixon's policy ("the policy"), along with conflicting information about the beneficiary designation on the certificate, see [Doc. 1-3 at 1-2 (JMN claim); Doc. 1-4 (Ashe claim); Doc. 1-5 (Ashe statement); Doc. 1-7 (Ashe letter); Doc. 1-8; Doc. 1-9 (Estate letter)]. Specifically, IOF received a claim from Nixon's daughter, Sanita D. Nixon, on behalf of her minor son JMN, whose name sounds similar to "Galen," [Doc. 1-3 at 1-2; Doc. 19]; a claim from Nixon's grandnephew Galen Ashe ("Ashe"), who lived with Nixon when the insurance application was completed, see [Doc. 1-4;

3

Doc. 1-5; Doc. 1-7; Doc. 1-8]; and a letter from the Estate objecting to the claims of JMN and Ashe, asserting that the death benefits would "best benefit the [E]state[,]" and demanding that IOF file an interpleader action to resolve the conflicting claims, see [Doc. 1-9]. IOF also received an affidavit from Johnson stating that, while completing Nixon's application, he was under the impression that Ashe was Nixon's son and that Ashe had the same surname as Nixon. See [Doc. 1-8].

On October 16, 2012, IOF filed an interpleader action in this Court seeking resolution of the adverse claims to Nixon's death benefits, and naming JMN, Ashe, and the Estate as defendants. [Doc. 1]. On November 7, 2013, the Estate brought a counterclaim against IOF, [Doc. 9], alleging that IOF is liable to the Estate for breach of contract and for the negligent acts of Johnson, [id. at 2-6], and seeking that IOF "be directed to [] pay the face value of the [c]ertificate to the Estate[,]" [id. at 6]. IOF filed a motion for summary judgment on June 28, 2013, [Doc. 49],[5] and filed an amended motion for summary judgment on July 3, 2013, [Doc. 50].[6] The Estate has not filed a response to the motion.

---

[5] On June 28, 2013, IOF filed a motion for an extension of time to file its motion for summary judgment, [Doc. 48], and the undersigned granted the motion on July 8, 2013, [Doc. 51].

[6] Because IOF's first motion for summary judgment, [Doc. 49], has been superseded by its amended motion for summary judgment, [Doc. 50], the original motion for summary judgment, [Doc. 49], is **DENIED** as **MOOT**.

4

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute as to any material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party's burden may be discharged by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Id. at 325. In determining whether the moving party has met this burden, the district court must "view the evidence and all factual inferences . . . in the light most favorable to the party opposing the motion." Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (citation omitted).

Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmovant may not rest upon mere allegations or denials contained in its pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Additionally, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position" is insufficient to defeat summary

judgment. Id. at 252. Rather, the court must determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." Id.

### III. DISCUSSION

The Estate alleges that IOF is liable for breach of contract because it failed to issue Nixon's death benefits to the Estate when it learned that there was conflicting information about the identity of the designated beneficiary. [Doc. 9 ¶¶ 10, 12]. The Estate also appears to assert a claim of vicarious liability based on the acts of Johnson, alleging that "[IOF] is liable to [the E]state for the . . . negligence of its agent or producer." [Id. ¶ 15]. IOF argues that it is entitled to summary judgment on both claims because there is no evidence that IOF breached any duties under the insurance contract and because Johnson was an independent contractor for whose acts or omissions IOF cannot be held vicariously liable.

**A.**  **Breach of Contract**

The Estate claims that IOF was obligated to pay the death benefits of the policy to the Estate once it discovered that Nixon did not have a son named Galen Nixon. [Id. ¶¶ 10, 13]. The Estate's argument appears to be that the existence of adverse claims by purported beneficiaries is tantamount to the absence of a beneficiary altogether, thereby triggering a contractual provision in the certificate that payment is to be made to the Estate where no beneficiary is designated. [Id.];

6

see also [Doc. 1-1 at 10]. IOF asserts that "the undisputed facts show that [] Nixon did designate a beneficiary[,]" [Doc. 50-1 at 7-8], and thus that the Estate's claim for breach of contract fails as a matter of law, [id. at 7-10].

To prevail on a breach of contract claim, the Estate must establish, among other things, that IOF breached a contractual duty. See Canton Plaza, Inc. v. Regions Bank, Inc., 732 S.E.2d 449, 454 (Ga. Ct. App. 2012) (citation omitted). The certificate imposes a duty on IOF to pay Nixon's death benefits to the Estate only if "no beneficiary survives or if no beneficiary is designated[.]" [Doc. 1-1 at 10]. The uncontroverted evidence of record plainly establishes that a beneficiary was designated on the certificate, and the mere fact that the identity of that beneficiary is disputed is insufficient as a matter of law to support a reasonable inference to the contrary. Indeed, the underlying interpleader action in this case–an action which the Estate asserts is legally "required," no less, see [Doc. 1-9 at 4]–presupposes that a beneficiary was designated, as it seeks to identify which of the competing claimants is the designated beneficiary in the certificate, not whether a beneficiary was designated at all, see [Doc. 1 at 6-7].

Accordingly, because a beneficiary is expressly designated in the certificate, IOF had no contractual duty to pay Nixon's death benefits to the Estate. And "[t]here being no contractual duty, there was no breach of that duty[.]" Savannah

7

Coll. of Art & Design, Inc. v. Roe, 409 S.E.2d 848, 849-50 (Ga. 1991), overruled on other grounds by Sturbridge Partners, Ltd. v. Walker, 482 S.E.2d 339, 340 (Ga. 1997) (trial court erred in denying summary judgment for defendant on breach of contract claim, where the contract did not "plainly and explicitly" impose the duty alleged by plaintiffs). The Estate's conclusory assertion that "there is no beneficiary," [Doc. 9 ¶ 13], finds no support in the record and is insufficient to withstand the motion for summary judgment. See Penaloza v. Target Corp., No. 13-10446, 2013 WL 5828008, at *1 (11th Cir. Oct. 31, 2013) (per curiam) (unpublished) (citing Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981)) ("When a nonmoving party's response consists of nothing more than conclusory allegations, summary judgment is not only proper but required.").

IOF also argues that it "initiated the subject inerpleader action in good faith on the basis of conflicting claims," and that the Estate's claim for breach of contract is thus an "improper attempt to assert its entitlement to the proceeds, which fails as a matter of law." [Doc. 50-1 at 9 (citation omitted)]. In the Eleventh Circuit, "a counterclaim by a claimant against an interpleader plaintiff can be maintained only if the claim is 'truly independent of who was entitled to the life insurance proceeds, which is the issue the interpleader action was brought to settle.'" Sec. Life of Denver Ins. Co. v. Shah, No. CV411–008, 2012 WL 3777135, at *5 (S.D. Ga. Aug. 29, 2012)

8

(quoting Prudential Ins. Co. of Am. v. Hovis, 553 F.3d 258, 262 (3d Cir. 2009)); see also Ohio Nat'l Life Assurance Corp. v. Langkau ex rel. Estate of Langkau, 353 F. App'x 244, 248 (11th Cir. 2009) (per curiam) (unpublished) (citing Hovis, 553 F.3d at 262). In other words, "the decision to discharge a stakeholder and thus reject [the counterclaims] against it depends [] on 'whether the [claims] are independent of the reason for the filing of the interpleader action.'" Graziosi v. MetLife Investors USA Ins. Co., No. 3:11–CV–80 (CAR), 2013 WL 592394, at *4 (M.D. Ga. Feb. 14, 2013) (third alteration in original) (footnote omitted) (quoting Nat'l Life Ins. Co. v. Alembik–Eisner, 582 F. Supp. 2d 1362, 1369-70 (N.D. Ga. 2008)).

As a consequence, "counterclaims [that] merely recapitulate the ownership dispute [] fall within the discharge of liability 'to the claimants both for further claims to the stake and for any claims directly relating to its failure to resolve that controversy.'" Lexington Ins. Co. v. Jacobs Indus. Maint. Co., LLC, 435 F. App'x 144, 149 (3d Cir. 2011) (unpublished) (citation omitted); see also Metro. Life Ins. Co. v. Carter, No. 3:04-CV-668-J32HTS, 2005 WL 2810699, at *12 (M.D. Fla. Oct. 27, 2005) (alterations in original) (footnote omitted) (quoting Lutheran Bhd. v. Comyne, 216 F. Supp. 2d 859, 862-63 (E.D. Wisc. 2002)) ("'[The] counterclaims are essentially based on the plaintiff's [sic] having opted to proceed via interpleader complaint rather than having chosen from among competing adverse claimants. Courts have

consistently rejected such counterclaims where, as here, the plaintiff was entitled to pursue interpleader relief.'").

Here, the Estate's "breach of contract claims arise directly out of [IOF's] refusal to pay the proceeds [to the Estate] and are therefore not truly independent of the interpleader action." Graziosi, 2013 WL 592394, at *5 (granting summary judgment for stakeholder where party asserting breach of contract "failed to indicate how her state law claims against [the stakeholder] [we]re not simply an attempt to assert her entitlement to the proceeds, which is the very issue the interpleader was brought to resolve."). Nor has the Estate "cited to any authority supporting the proposition that the proper commencement of an interpleader action may in itself give rise to a counterclaim against the stakeholder for failing . . . to have paid the moneys out to the counterclaiming defendant without benefit of court adjudication of conflicting claims among defendants." See Carter, 2005 WL 2810699, at *12 (internal marks omitted) (quoting U.S. Trust Co. of N.Y. v. Alpert, 10 F. Supp. 2d 290, 307 (S.D.N.Y. 1998)). Accordingly, IOF's motion for summary judgment, [Doc. 50], is **GRANTED** with respect to the Estate's counterclaim for breach of contract.

**B.**     **Vicarious Liability**

The Estate also appears to proceed under a theory of vicarious liability, arguing that "[IOF], through its producer, was grossly negligent in filing the [a]pplication . . . and [] issuing [the c]ertificate on the basis of that filing." [Doc. 9

10

¶ 12]. IOF asserts that "[t]he Estate's claim fails as a matter of law because IOF cannot be liable for the acts of an independent contractor[,]" and the record establishes that "[Johnson] was an independent contractor with the [IOF]." [Doc. 50-1 at 6-7].

"'An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer.'" Sun Life Assurance Co. of Canada (U.S.) v. Williams, No. 5:06-CV-139 (CAR), 2008 WL 762204, at *6 (M.D. Ga. Mar. 18, 2008) (quoting Perry v. Ga. Power Co., 629 S.E.2d 588, 590 (Ga. Ct. App. 2006)). "In the absence of evidence of actual control, the test distinguishing an employee from an independent contractor is whether the employer assumed the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." Id. (citation and internal marks omitted) (quoting Fortune v. Principal Fin. Grp., Inc., 465 S.E.2d 698, 700 (Ga. Ct. App. 1995)). Further, "[w]here the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed such control." Cotton States Mut. Ins. Co. v. Kinzalow, 634 S.E.2d 172, 175 (Ga. Ct. App. 2006) (citation omitted).

The record conclusively establishes that Johnson was an independent contractor and that IOF did not control the time, manner, or method of his work. Johnson's employment contract with IOF expressly provides that Johnson is "an independent contractor and nothing in this or any other agreement between [Johnson] and IOF shall be construed to create the relationship of employee and employer between [Johnson] and IOF." [Doc. 49-3 at 4]. The contract also states that "[a]s an independent contractor, [Johnson is] free to operate [his] business in the manner [he] deem[s] appropriate and [is] totally responsible for all expenses incurred in this operation." [Id.]. Moreover, Jon Fargo, a manager with IOF who is "familiar with records . . . relating to [IOF's] [p]roducers," states in his affidavit that "Johnson was an independent contractor who was allowed to solicit business for [IOF,]" that "[IOF] has never controlled the time, manner, or method in which Johnson sold its products," and that Johnson "has never been an employee of [IOF] and has never executed an employment contract with [IOF]." [Doc. 50-3 ¶¶ 3-5]. The Estate has failed to rebut the evidence that Johnson was not an employee of IOF, nor has it otherwise presented any evidence that would support a finding of vicarious liability. Because Johnson was an independent contractor of IOF, the Court finds that IOF cannot be held vicariously liable for Johnson's purported negligent acts and omissions. Accordingly, IOF's motion for summary judgment,

[Doc. 50], is **GRANTED** as to the Estate's counterclaim that IOF is liable for the acts of Johnson.

## IV. CONCLUSION

For the foregoing reasons, IOF's unopposed amended motion for summary judgment, [Doc. 50], is **GRANTED**, and the original motion for summary judgment, [Doc. 49], is **DENIED** as **MOOT**.

**IT IS SO ORDERED**, this 19th day of December, 2013.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE